**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5888-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL SHANNON,

    Defendant-Appellant.

_____

> Submitted September 30, 2020 – Decided  October 9, 2020
>
> Before Judges Fisher and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket Nos. 07-10-0913 and 13-05-0406.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).
>
> Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Andre R. Araujo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Michael Shannon appeals the order denying his application for post-conviction relief (PCR), arguing:

THE PCR COURT[1] ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING AS HIS PLEA WAS NOT KNOWINGLY GIVEN BECAUSE PRIOR COUNSEL MISADVISED HIM REGARDING THE APPLICATION OF HIS JAIL CREDITS.

Because defendant presented a prima facie case that his counsel misadvised him as to the jail credits he would receive, see State v. Preciose, 129 N.J. 451, 462 (1992), we reverse and remand for an evidentiary hearing.

Defendant pleaded guilty to three violations of probation (VOPs) and two indictments on a single day. The jail credits awarded on two of those matters are pertinent to this appeal. Defendant received credit for 463 days when sentenced on two gun-possession charges to an aggregate five-year prison term with thirty-six months of parole ineligibility under 13-05-0406. He received credit for 687 days when sentenced to a concurrent four-year term with thirty months of parole ineligibility for violating Drug Court probation on a school-zone drug charge under 07-10-0913.

---

[1] Different judges presided at defendant's plea hearing, sentencing, motion hearing to correct jail credits and PCR hearing.

A-5888-17T4

He argues his ineffective plea counsel misadvised him he would receive 687 days of jail credit on all matters and would not have pleaded guilty had counsel advised he would receive only 463 days credit on the controlling sentence.

When the plea judge asked about the sentences he faced on both matters, defendant accurately answered, and, in reply to the judge's next question, explained his understanding of a concurrent sentence. Defendant then told the judge, "[t]he only term I'm really looking at is the five with a three. The second one is running along[.]" The judge responded: "Well, that might be a little different in that because depending on the credits, but you're correct. And even the new case [the gun charges] is going to run concurrent with your [D]rug [C]ourt alternative sentence; right?" Defendant responded affirmatively and added, "[t]hat's what's going to aggregate my credits . . . as well." The judge did not respond and proceeded to take the pleas.

When given the opportunity to allocute at sentencing, defendant inquired about jail credits on the aggregate sentence:

> I just want to ask that when [the plea judge] was here . . . he actually had me give a breakdown to him of what I understood about the way I'm getting sentenced . . . which would mean that would be an aggregate sentence. My VOP, I guess, would run aggregate to the five do three. That's the way [the plea judge] . . . made

me state it on the record[.] So I explained to him that was the thing for the credits for time served since with aggregated sentence the credits for time served were to merge from my VOP from drug court, merge with the credits I have for the gun charges[.]

The ensuing colloquy between both counsel and the sentencing judge focused on the concurrent prison terms negotiated under the plea agreement, during which the sentencing judge stated he was going to award defendant "credit for time served as calculated in the presentence report" (PSR) on the gun charges. After defense counsel clarified those credits totaled 463 days, defendant said he was "just making sure that from what [he] understood that this would be an aggregate term, an aggregate sentence."

Defendant's counsel interjected:

> [W]e explained to defendant everything is running concurrent. . . . When he gets to [S]tate prison we're hoping that the State prison is going to treat this as . . . one aggregate sentence. That he keeps asking me that and I keep telling - - I mean we've been through this multiple times before multiple judges. But the aggregate is really a five do three.
> And the credit on the VOP drug court is actually a lot. I mean on separate indictments he's looking [at] really over 600 days.

When the judge clarified the credits were 623 days, defendant's counsel responded, "Yes. 687 on [the Drug Court VOP]. 687." He repeated that he

hoped it would "be seen as an aggregate sentence." The judge expressed his intention that all sentences were concurrent.

Reviewing this matter de novo because the PCR court did not conduct an evidentiary hearing, State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016), and viewing "the facts in the light most favorable to defendant," Preciose, 129 N.J. at 463, we conclude the record supports defendant's contention that he established a prima facie case warranting an evidentiary hearing.

Although it was made clear defendant's sentences ran concurrent, defendant's contention that he was advised he would be credited with 687 days was never belied by the farrago of information regarding aggregate sentences and jail credits. The plea judge did not address defendant's belief that concurrent sentences would "aggregate [his] credits," and that issue was muddled by defense counsel's comments that defendant was "looking [at] over 600 days" of jail credit—quantified at 687 days—after stating defendant's aggregate sentence was "five do three." The credits pertained to the Drug Court VOP, but the controlling sentence was meted out on the gun charges which carried only 463 days of credits.

During his pro se motion to correct jail credits, defendant explained his defense counsel showed him "different sets of times that said that [he] would all

get them because [his] time would be aggregate." Defendant also described hearings on three consecutive days before Judge Malestein when he was told by the judge the credits would be, as the motion judge described, "awarded in the aggregate." He also told the motion judge that "lawyers out there" listened to a CD recording of a plea hearing before Judge D'Arrigo; the lawyers told defendant he "would be awarded [credits] . . . for X amount of dollars which [defendant] didn't have, so [he] couldn't do it." Defendant asserts in his merits brief that he did not appear before Judge Malestein on either of the two indictments in issue, and no proceedings before Judge D'Arrigo appear in the record. But as the State points out in its merits brief, during a proceeding before the sentencing judge some five months prior to sentencing, defendant's counsel told the judge: "We counted all his credits one day before Judge Malestein. I think they've done it at least three times now for him." We discern defendant was not present at that proceeding, and it is not clear what credits were discussed, when they were discussed, and who "they" were that discussed the credits with defendant.

An evidentiary hearing is thus required to determine if defendant's repeated inquiries about aggregate jail credits were engendered by any misadvice from his counsel. On remand, the PCR judge can explore that issue

6

and review any proceedings—records of which were provided to us and those which were not—at which the jail-credit issue was discussed.

We do not express any opinion about the merits of defendant's claim. We recognize the sentencing judge told defendant he would receive the credits set forth in the PSR which correctly set forth the jail credits for each indictment; that defendant's counsel represented to the sentencing judge the "[c]redit appears correct"; and when asked by counsel if he agreed, defendant answered, "yes." The sentencing judge, however, never asked defendant or his counsel if defendant had reviewed the PSR with counsel. We also note that the sentencing judge announced on the record the correct credits on each indictment. And, defendant told the motion judge "the lady that was on the side[2] came alongside [him], sat next to [him] while [he] was in custody and would break down the breakdown to [him]," and explained when the judge "sends it over" defendant would be "awarded" because he had "a certain amount of days to look at the [PSR]" which had credits of "687 on another and 463 on another." We leave to the PCR judge to determine what defendant was told by counsel and what

---

[2] Defendant mentioned "the lady" after speaking about a proceeding before Judge Malestein. Defendant was not clear if "the lady" spoke with him in that judge's courtroom. Nor is the identity of the lady or her capacity revealed in the record.

defendant knew about the quantity of his jail credits and how they would be applied.

We also leave consideration of the Strickland/Fritz prongs,[3] including whether defendant demonstrates "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also State v. DiFrisco, 137 N.J. 434, 457 (1994).

Reversed and remanded for proceedings consistent with this opinion. Unless defendant was released after serving the maximum sentence and does not face the possibility of reincarceration on these matters, we direct the evidentiary hearing be conducted even if defendant was released on parole; jail credits will still be in issue if he is returned to State prison on either or both of these two charges. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92; see also Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

A-5888-17T4